All right, our next case this morning is Huri v. Office of the Chief Judge of Cook County, case number 12-2217. Good morning, may it please the court, my name is Kamran Memon. I represent the appellant Ms. Huri. We are here on an appeal after a motion to dismiss. Ms. Huri has pled Title VII claims against the Office of the Chief Judge of the Circuit Court of Cook County for a hostile work environment based on religion and national origin and retaliatory harassment and equal protection claims against three supervisors. Employed by the Office of the Chief Judge for a hostile work environment based on religion and national origin. With regards to the Title VII claims, first, Huri's EEOC charges adequately alleged a hostile work environment as the charges provided sufficient information to satisfy the liberal requirements of this court and the EEOC. Second, Huri's second amended complaint pled sufficient facts to allege a Title VII hostile work environment based on religion and national origin as she alleged harassment by supervisors based on religion and national origin that was subjectively and objectively offensive, that was pervasive, and that continued even after she complained. Third, Huri's second amended complaint pled sufficient facts to allege a Title VII hostile work environment based on retaliation as she alleged retaliatory harassment that was pervasive enough to discourage employees from complaining about employer conduct that violates Title VII. With regards to her equal protection claims, first, Huri's second amended complaint pled sufficient facts to allege a hostile work environment based on religion and national origin in violation of the Equal Protection Clause as she alleged intentional harassment by supervisors based on religion and national origin that was pervasive enough to impact her working conditions. Second, there was no basis for qualified immunity for two of the defendants, the third one did not seek qualified immunity, because the constitutional right to be free from a hostile work environment based on religion and national origin was clearly established in November 2010. May I answer any questions on any of these issues? Well, I find it unusual that you are leading with your equal protection claim, because it seems to me that the retaliation and hostile work environment dismissals were more problematic based on what was in this complaint in our decision in the Swanson case about how to apply the Twombly-Iqbal plausibility requirement to discrimination claims under the statute. And basically, it's a light touch, and we don't dismiss these complaints on Iqbal-Twombly ground if it's clear what kind of discrimination the plaintiff is alleging, and that seems to sort of resolve the appeal in your favor. So I'm surprised that you led with your equal protection claim rather than the statutory claims. Your Honor, if I'm understanding you correctly, are you saying that it appears that our Title VII claims are stronger than our equal protection claims? Well, it seems to me that the complaint was dismissed prematurely, because under our decision in the Swanson case post-Twombly-Iqbal, it doesn't take much by way of factual allegations to support a statutory claim, as long as it's clear what sort of discrimination is being alleged, who the players were. So basically, the who, what, where, when, why kind of aspect of notice pleading post-Twombly-Iqbal on a simple claim like this one. If we're talking about a more complex claim of discrimination where you're looking at a large police department or a fire department and something more complex than that, we've got other cases that are addressed to what's required to get passed a motion to dismiss in that context. But otherwise, these cases move forward to summary judgment, at least. That's right, Your Honor, and we were obviously very surprised by the dismissal. The plaintiff is not required to plead evidence. The plaintiff is not required to plead detailed facts. The plaintiff is only required to plead a story that holds together, a story that could have happened. And certainly, the allegations and the complaint hold together, they could have happened. But basically, her story is she's a Saudi Arabian Muslim in a workplace that is run by Christians who practice their faith on the job in terms of holding prayer sessions on the job and have otherwise discriminated against her in the terms of her employment by concocting false allegations of poor performance and screaming at her and other forms of harassment. That's it in a nutshell, isn't it? Your Honor, for the first several years of her employment, she did work under a supervisor who made her preference for, quote unquote, good Christians. That's the term the supervisor used. She made her preference for good Christians very clear. And she subjected Ms. Hoorie to regular hostility in the form of false allegations, screaming, different rules, and so on. After Ms. Hoorie's transfer, she no longer worked for that supervisor. Her new supervisors who worked for the same employer in the same building under the same HR department did not make comments regarding religion, but they continued the same sort of hostile actions. I will, if the court has nothing further, I'll reserve for rebuttal. Thank you. Okay. Ms. Oxford. May it please the court, my name is Susan Oxford. I represent the Equal Employment Opportunity Commission as amicus curiae. And I'd like to emphasize first that although the county appears to have conceded the first issue that we briefed in our amicus brief, the question of whether Hoorie's EEOC charge suffices to satisfy the pre-suit requirements of Title VII for a hostile work environment, they appear to concede it because in the arguments saying that she didn't allege enough facts in her complaint to cover this claim, they wrongly argue that she can only go back 300 days from the date of the first charge. So by pinpointing the first charge as the date in which they make this incorrect argument about the 300 days, they seem to suggest that the first charge is operative here to support the hostile work environment. But I call this to the court's attention because elsewhere in the county's brief, particularly at pages 9 and 10, they argue that the reason they no longer advance this argument is because Hoorie's third EEOC charge, filed in November 2011, uses the phrase hostile work environment. And so by pinning their concession on the third charge, it creates some ambiguity as to whether or not they are in fact conceding that the first charge was adequate. So we would ask this court, for the reasons stated in our brief, to please clarify that in fact the first charge was completely adequate to sustain. And this impacts only the scope of the proofs, right? Yes. Under a hostile work environment cause of action or theory. It would be different if we were in the discrete acts of discrimination area, which we're not. Correct. The 300 days, although this court has said that if you were looking at related issues like motive, you might be able to rely on evidence more than 300 days as far as the acts that are actionable. If they're discrete acts, they have to be within 300 days. If it's a hostile work environment, an ongoing claim, it can be more than 300 days, and that's the Supreme Court's decision in Morgan. But it matters here that her first charge is just as adequate to support the hostile work environment as her third charge because, in fact, she worked in two different offices under two different supervisors. And so because one of the harassing acts has to occur within the 300 days, were this court to find only what the county alternatively appears to be arguing, that the November 2011 charge is sufficient, then there would be a question about whether she could go back in time to her first place of employment. And then we also asked this court to clarify that the district court erred to the extent it relied on the standard for a hostile work environment as the standard for assessing whether she pled a retaliatory hostile work environment. And, obviously, the standards in terms of pleading, Your Honor, is already reviewed, and we stand by those. But in terms of assessing what is the ultimate standard she would have to demonstrate in summary judgment, that would be the standard for Burlington Northern v. White of materially adverse, that is, would likely to deter an individual, and we submit that what she put in her complaint is more than adequate to demonstrate that she was subjected, she alleges, harassment in a hostile work environment that would likely deter a reasonable employee from making or supporting a charge. The substantive legal standard is more relaxed. Yes, absolutely. So regardless of whether there's enough in the complaint to support the direct discriminatory hostile work environment claim, the retaliation claim survives, is your position? Yes. Okay. And just very, very briefly, in terms of our first point, the adequacy of the charge that she filed, this court has very strong liberal law in terms of a judicial claim that's like and related to something in the EEOC charge. The plaintiff can go forward, but we would urge this court to look to the EEOC's regulation and give deference to it because there are circumstances where this court's like and related body of law might appear to a district court to be more stringent than, in fact, the EEOC's regulatory explanation. And so we rely on our explanation of the regulation in our brief and urge this court to give deference to it. So we're not loose enough. You want us to loosen it up even more. Thank you. I guess that's a yes. If the court has no further questions. Thank you. Ms. Fallon. May it please the court, counsel, my name is Patricia Fallon, and I represent the Cook County Defendants in this matter. I would like to begin with what the court has already identified in terms of the ruling in Swanson and what is required under Rule 8 in light of that ruling and how the Second Amended Complaint does not fulfill what the court has identified as the who, what, when, where, and why. I'd like to begin with the fact that there is no allegation in the Second Amended Complaint that the office or the employer allowed employees to practice their faith on the job by holding prayer services. There was one allegation of a prayer service in December of 2009 in which, as the court has properly identified, a supervisor asked employees to join hands in some sort of a prayer circle. The plaintiff did participate. There's no allegation that the plaintiff was required or under duress or that she was told she would suffer some adverse job consequences. She did not. And I think it's important to highlight that there's one fact of a prayer circle in December of 2009, and this was not something that occurred routinely according to the Second Amended Complaint. Also, there's not a link between the allegation of subjecting the plaintiff to additional scrutiny or different rules or screaming at the plaintiff. There's not a link between those allegations and it being related to her national origin or her religion in the facts as pled in the Second Amended Complaint. The plaintiff puts forth an allegation or a fact that because of the way she dressed, she infers or anticipates that everybody knew her religion and national origin. There's no allegation that anyone ever made a comment regarding her religion or national origin. That's a reasonable inference based on the factual allegations. That everybody would know that she's Muslim? Yes. Okay. I don't think you can argue against that. Thank you. I just want to highlight the fact that there's no indication that the additional conditions that she was subject to in terms of the differing rules or higher scrutiny or criticisms were connected to her religion. There's no fact as pled in the Second Amended Complaint that it was related to that. You're asking too much at the pleading stage, Counsel. All she needs to do is say, I was subjected to certain forms of harassment. She doesn't have to be comprehensive about it. She doesn't have to have factual allegations that plead to the precise proofs that she's going to have to come forward with at a later stage in the proceedings. We're at a motion to dismiss here, and our standard is still rather lenient post-Twombly and Iqbal with respect to straightforward discrimination claims and retaliation claims. This is not a complicated case. This is a 12B6 case. Does she get into the courtroom? Now, you might be able to kick her out on a summary judgment, but I think she's entitled to get into the courtroom based upon what she said. Well, the only other point I would make in relation to that, not disputing at all the Twombly-Iqbal standard and how it changed with the decision in Swanson, is that this case involved an allegation of hostile work environment, which I think is different than a straightforward discrimination case where she would need to allege sufficient facts to meet the severe and pervasive conduct that would constitute a hostile work environment, and I don't believe that she has. The facts as they are pled are very vague. The time frame is very wide. It delineates a time frame of 2002 through 2010. There are no dates of alleged complaints, who she complained to. None of that is necessary in a complaint. All of that will come out in discovery, depositions, and summary judgment. If I may, I'll move on to my next point, as I see my time is running short. In relation to the Title VII retaliation claim, I would submit that whether you apply the standard in Burlington Northern, as has been raised by the EEOC, or the standard as applied in the district court decision where the district court highlighted the Vance case, I think the plaintiff fails under either standard. There's simply no evidence, not evidence, excuse me, no allegation of an adverse job consequence in this case of any kind. The plaintiff never suffered any discipline, demotion, transfer, change in her salary, change in her job characteristics that were materially adverse, and I think that it's important to highlight that without any allegation of an adverse employment action, the Title VII retaliation claim is, the plaintiff is going to have difficulty meeting her burden on that. With respect to the scope of the charge that was also raised by the EEOC attorney, I will highlight that while the county defendants are not seeking affirmance from this court on that issue, given this court's recent rulings, given the fact that the plaintiff was pro se when she filed her EEOC charge, that doesn't equate to us conceding. It's simply that we are seeking affirmance on the other bases as identified in our briefs. And if the court doesn't have specific questions for me, I will end there. All right, thank you, counsel. Thank you. Ms. Welch. Good morning, Your Honors. May it please the court. I'm here only on the 14th Amendment claim against Felicio and Lawless, who were the second set of supervisors. The state employees. The state employees. So it's only the Fourth Amendment claim, not the Title VII claim, although of course the analysis is quite similar, if not identical, and only as to those two defendants, so as to the second time period involved here. And with all due respect to the court, I believe that this is in fact a proper case for dismissal under 12b-6 under Swanson. This court has dismissed on 12b-6 other discrimination claims. We've cited several, including McReynolds, including Soong Park, including Charleston. McReynolds was a large class action involving police and fire department. Right, but the nub of it, and McReynolds also pointed out that it called Twombly and Iqbal a heightened pleading standard, and it was about making allegations of the causal link. Now what Swanson says is under Twombly and Iqbal, for a simple one-event claim, a promotion claim, what you have to allege is, I'm a member of a protected class, I was injured by not getting the promotion, I was qualified for the promotion, I applied for the promotion, but someone outside my class got it. And what that shows is you're in the class, you have the injury, and your injury is causally linked, plausibly causally linked, to an invidious discrimination, and you show that by those two additional facts of showing I applied and was qualified, and it went to someone not in my class. Well, I think it's wrong to speak in terms of showing at the pleading stage. Actually, that's a word that Twombly and Iqbal use. But to allege, I mean, I'm using those words interchangeably. But when you get to something slightly more complicated, like a hostile work environment claim, in which you have to show that the environment was so pervasively permeated with this invidious discrimination that it altered the workplace, you have to show more than just, it's the equivalent of showing I applied and was qualified. You have to provide, Twombly and Iqbal make it very clear that you have to put factual meat on the bones. Under Swanson, you couldn't just say, I'm a member of a protected class and I didn't get a promotion. You have to put some meat on those bones. You have to say, I was qualified, I applied, and somebody outside my class got it. And what Plaintiff does is the first set of allegations that I was talking about. She didn't put meat on the bones. For example, the court indicated that she alleged that she was criticized for her work performance, but we don't know that. We don't know what the topic of the criticisms was. We don't know what the topic of the- And if she doesn't have adequate factual support for the more general allegations about being falsely criticized for misconduct and subjected to different rules and screamed at and subjected to more intense scrutiny than others, then her claim will be dismissed on summary judgment. No, Your Honor, that's not so. Because, in fact, because of this lack of factual detail, this lack, Twombly and Iqbal repeatedly used the word factual enhancement, sufficient factual detail. They say the word fact over and over again. And in this case, you have to understand, you needed more facts to know whether this was pervasive enough to rise to the level of a hostile work environment. And that's why it's a little more complicated than Swanson. But even under Swanson, you know, Swanson could not have gone- Swanson did not indicate that you can say, I'm in a protected class and I didn't get a promotion, and the details will work out in discovery. The whole idea, and Twombly and Iqbal were very clear about this, you don't just say, we'll figure this out in discovery. I understand that, but we've got some factual allegations about what it is that she was subjected to. They are general. They don't supply dates, times, frequency, names, et cetera. I'm not looking for that level. I don't think she needed to supply that level of detail, but I think she had to say, when she says, I was repeatedly falsely criticized, we don't know if the repeated list was every hour or every year. That's for discovery. That's facts. But, yes, exactly. That is facts, and some facts. Not the day, not- For example, in one of the cases she cites, the plaintiff said, this happened every week. If she said every week, then we would be able to judge whether it was sufficiently pervasive. But we can't know that from the skeletal facts that she alleged. We can't make the link. It's not plausible without those additional factual enhancements. What's implausible about it? About saying, I've been repeatedly subjected to false criticisms, false allegations of misconduct, different rules than my coworkers, I've been repeatedly screamed at, subjected to greater scrutiny than other coworkers, and she identifies a couple of different orders that she was under that nobody else was under. What's implausible about any of that as a basis? I'm not saying they're not factually implausible. I'm saying it's not plausible to say that that rises to the level of a hostile work environment, or that it was connected to her religion or her national origin. There are three separate groups of claims here. One is the repeated criticism, repeated accusations. We don't know from these facts if these two defendants were the kind of bosses who screamed at everybody. Because she doesn't say, unlike Swanson indicates, you have to make some allegation to show that there's a causal link to the invidious discrimination. We don't know what the topic was, so we don't know how often it happened. We don't know if it was in public. We don't know anything. I'm not saying she had to say what day it happened, who it was in front of, and things of that nature. I'm saying she had to provide some facts from which we could infer that this was pervasive. Now, she does say that she was treated differently in a few ways from her coworkers. She says, my daughter wasn't allowed to wait for me in the lobby, and two others. But these are very trivial things. These sorts of allegations don't rise to the level of a pervasive discriminatory. They don't alter the terms of her employment. Not standing alone, but there's more to it than that. Right, right. Then there's a single incident where she was denied time off, but we don't know if she, as in Swanson, applied for it in the proper way. We don't know if she was qualified. Did she walk in one day and say, I want to take the next day off? Or did she go in and say, here's my written request for time off for a time that I already have accrued? Right, you're going to find all that out in discovery. Your Honor, Twombly and Iqbal don't require that. Twombly and Iqbal say don't go to discovery. Those were complicated antitrust claims and claims in the context of broader scope discrimination claims. Iqbal was a discrimination claim. Right, but in a much different context than this. My very last point is, even if one could say that she had pled a 14th Amendment claim against these two defendants, they're entitled to qualified immunity under these claims. If the Court has no further questions, we ask that the Court affirm the dismissal of the claim against the state defendants. Thank you. Anything else? Counsel. Your Honor, if the Court has no further questions, then I will rely on our briefs. I think we're satisfied. Thank you. Thank you very much. All right, the case is taken under advisement.